## Grassham v. Robertson et al.

March 24, 1939.

Joe E. Price, Judge.

ADRIAN H. TERRELL, EATON & EATON, and C. C. GRASS-HAM for appellant.

ALEXANDER & REED for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellant, Belle W. Grassham, by a lease dated January 31, 1937, leased to appellee a house and lot on the south side of Broadway and on the west side of Thirty-first street in Paducah, the lease containing, among others, the following provisions:

"The premises shall not be underlet without the written consent of the lessor endorsed thereon.

"It is hereby expressly agreed and understood by the said parties that the said property is to be used as hereinafter described and in no other way, viz, as a lunch and drink establishment complying with all federal, state, county and city laws. Also as a home if the party of the second part should so desire.

"This lease, at the option of the lessor, or lessee, shall be void and forfeited in case of any violation on the part of the lessee, or lessor, of any stipulation herein contained."

The house covered by this lease was operated by appellee as a lunch and drink establishment and was known as the "Twinkling Star." It consisted of a large room across the entire front of the building and two rooms in the rear. In the large front room there

is a railing some three feet high with a swinging gate which partitions it into two parts.

In the latter part of January and the early part of February, 1937, a large portion of Paducah was submerged in the big flood, the water extending as far west as Twenty-ninth Street and lacking about two squares of reaching the property involved in this litigation. Paducah was almost completely evacuated as a result of the flood.

The Red Cross moved into the big front room of the "Twinkling Star" at the beginning of the flood and remained there a few days. After it moved out the appellee, Mrs. Robertson, leased space to the Western Union Telegraph Company in the lot in front of the building for its trailer and equipment, which it set up for temporary purposes. The company occupied this lot in this manner beginning February 2 for about thirty days and paid appellee $25 per month rent. No part of the building was occupied by it.

Herman Toof, conducting a brokerage business, leased space in the large front room consisting of two tables wide and two tables deep, the size of the tables being approximately 3 x 4 feet, this space being in the southeastern part of the front room. He remained there approximately three weeks and paid rent to the appellee at the rate of $25 per month.

Appellee also leased space to the Postal Telegraph Company in the big front room, removing a candy case for this purpose. The space leased by this company was in the northwest corner of the room and occupied about one-third of the east half of the room, the space being occupied from the last day of January until March 4, and appellee charged for this space $25 per month.

The insurance firm of Payne and Loeb leased space in the southwest portion of the east half of the large front room from February 1 for about 15 days at the rate of $25 per month, the portion occupied by them being about 5 x 5 feet.

The appellee furnished tables, chairs, janitor service, heat and electricity for the four above named temporary occupants of the premises; she testifies that she lost money as a result of such occupation of her premises by these parties, as the cost of the electricity and other services furnished them were more than the rent she received.

Appellant made no objection to the occupation of the premises by the Red Cross but when she ascertained that the temporary occupants of the premises were paying rent to appellee, she demanded that this rent be paid to her and on appellee's refusal to accede to this demand, instituted a forcible detainer proceeding against her in a court of a justice of the peace, making the occupants above named parties and demanding that they report the amount of rent owing by them. These occupants filed answer reporting the amount of rent due by them, which was approximately $119, and two of them paid into court rent amounting to $59.

On trial before a jury in the justice's court, the appellee was found not guilty of the forcible detainer. Appellant executed bond and traversed to the circuit court. On trial in the circuit court a jury was impaneled and at the conclusion of the evidence the jury were instructed by the court to find for the defendant, which was accordingly done. On that verdict judgment was entered finding appellee not guilty of the forcible detainer and dismissing the proceeding. It was also adjudged that appellee was entitled to the money paid in and due as rent. From that judgment this appeal is prosecuted.

In Cities Service Oil Company v. Taylor, 242 Ky. 157, 45 S. W. (2d) 1039, 1041, 79 A. L. R. 1374, it is said:

"The weight of authority, and the better reasoning, support the rule that restrictive covenants are strictly construed, and will not be extended beyond the literal requirements of a reasonable interpretation of the terms employed."

In the case at bar it is doubtful whether or not there was a subletting, or underletting, as designated in the lease, of the premises sufficient to work a forfeiture. Were a forfeiture declared, we would be extending the restrictive covenants beyond the requirements of a reasonable interpretation of the terms of the lease. As said by this court in Mullins v. Nordlow, 170 Ky. 169, 185 S. W. 825, 830:

"The law gives the word 'sublet' a clear and distinct meaning, that is, it means to make a sublease, accompanied by a surrender of the possession and control of the premises, or at least a part thereof. In Am. & Eng. Enc. of Law (2 Ed.) vol. 18, page

680, under the title 'Lessees,' it is said: 'Covenants against subletting, like covenants against assignments, are to be strictly construed against the lessor.' "

This same opinion quotes with approval **Tiffany on** **"Landlord and Tenant"** as follows:

"As before explained, a mere letting of lodgings, the control of the room being retained by the owner, does not create the relation of landlord and tenant nor is such a letting, technically speaking, a lease. Consequently, such a letting by a lessee does not involve the breach of a provision against subletting."

Viewed in the light of these authorities, we are unwilling to say that in the circumstances of this case there was a subletting or underletting sufficient to work a forfeiture of the lease. The persons and firms above named whom appellant seeks to have considered as tenants or sublessees were in joint occupancy of the front room with appellee, who was conducting her own business therein at the same time and who was in full and complete control of the premises, except to the extent that these temporary occupants were enjoying the use of a limited amount of space in the front room for a purely temporary purpose and under the necessity of a great emergency. Appellee was doing what good citizenship required of her, sharing space in her premises with those whom the flood had driven from their regular places of business. It is true she made a charge therefor, but it is obvious that those whom she charged were amply able to pay, and it is doubtful whether she made a real profit on the transaction.

We feel that the lower court was eminently justified in holding that there was no substantial violation of the terms of the lease by subletting or by using the premises contrary to the provisions of the lease. The judgment is affirmed.